**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CLINT WALKER, :<br><br>    Plaintiff, :<br>:<br>   v. :<br>:<br>JACK DOES 1-40, et al., :<br>:<br>    Defendants. :<br>: | Civil Action Nos.<br>07-5392 (WJM)<br><br>**O P I N I O N** |

CLINT WALKER, Plaintiff Pro Se
Special Treatment Unit
Avenel, New Jersey 07001

**WILLIAM J. MARNINI, District Judge**

This matter comes before the Court upon submission of amended complaint by Plaintiff Clint Walker ("Walker").  For the reasons stated below, Walker's amended complaint is dismissed with prejudice.

### BACKGROUND

**I.    Origination of the Instant Action**

On September 21, 2007, the Clerk received the complaint docketed in the instant matter as Entry No. 1.  The complaint asserted claims on behalf of numerous plaintiffs ("Plaintiffs"),

Walker being listed as one of them.[1]  See Docket Entry No. 1. On November 1, 2007, this Court issued an Order and accompanying Opinion ("November Order and November Opinion") dismissing the original complaint and terminating the instant case.[2]  See Docket Entries Nos. 2, 3.  Claims of certain Plaintiffs, Walker included, were dismissed without prejudice (and these Plaintiffs were granted leave to submit their amended complaints), while claims of other Plaintiffs were dismissed with prejudice.  See id.

On November 27, 2007, the Clerk received Walker's amended complaint, submitted pursuant to this Court's November Order. See Docket Entry No. 4.  The submission arrived accompanied by Walker's applications for appointment of pro bono counsel. See Docket Entry No. 5.

## II.  Original Complaint

This original complaint submitted by Plaintiffs alleged that, on August 30, 2007, Plaintiffs' constitutional rights were violated

---

[1]

Plaintiffs were a group of persons involuntary civilly-committed pursuant to the Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24 et seq., and confined at the Special Treatment Unit, Annex, Avenel, New Jersey ("Facility"); Plaintiffs "self-certified" themselves into a "class" for the purpose of filing their original complaint.  See Docket Entry No. 1.

[2]

All Plaintiffs other than Plaintiff Banda, the person who appeared to be the drafter of the original complaint, were terminated as Plaintiffs in this action, and the Clerk opened individual matters for each of these Plaintiffs, Walker included. See Docket Entry No. 4.  The instant matter was opened for Walker.

by one hundred and eight defendants.[3]  See Docket Entry No. 1.

The allegations set forth in the original complaint fell into two categories: (1) those common to all Plaintiffs; and (2) those based on the circumstances particular to--and, therefore, presenting claims unique to) individual Plaintiffs.[4]  See id.  The allegations common to all Plaintiffs were summarized as follows:

> According to Plaintiffs, the chain of August 30th events started at 8:25 A.M. with the appearance of an unnamed corrections officer, who was "with a 'gun.'"  Allegedly, five minutes later, at 8:30 A.M., Plaintiffs . . . were "ordered to the Dayroom [and] told to line up and face the wall, [and] keep eyes forward."  Plaintiffs allege that, five minutes later, they were "pat-searched and led to the Rec[reation] Yard."  Seven minutes after they entered the recreation yard, Plaintiffs were handed cups and served with, approximately, half-a-cup of water per person.  From this point on, water was re-served to Plaintiffs on half-an-hour or hourly basis, although Plaintiffs were finding the supply of water insufficient, and the water itself insufficiently chilled.  According to Plaintiffs, at 8:45 A.M., that is, thirteen minutes

---

[3]
The list of original Defendants was as follows: Defendant Jon Corzine, Governor of the State of New Jersey; Defendant George Hayman, Commissioner of New Jersey Department of Corrections; Defendant Bernard Goodwin, Administrator of the Facility; Defendant Cindy Sweeney, Assistant Superintendent of the Facility; Defendant Ann Milgram, Attorney General for the State of New Jersey; Defendant Merrill Main, Clinical Director of the Facility; Defendant Tina Spanuolo, Supervising Program Specialist at the Facility; and one hundred John/Jack/Jane/Joan Doe Defendants, who are corrections officers or public advocates employed by the State of New Jersey, as well as Defendant John Doe, who is a "Regional Commander of Department of Corrections."  See Docket Entry No. 1, caption.

[4]
With respect to Walker, the Court noted that the original complaint alleged that "Walker was taken to see the nurse at 3:00 P.M. for an unspecified medical reason and returned to his sleeping quarters half an hour later." Docket Entry No. 2, at 10.

after Plaintiffs were removed into the recreation yard,
the Facility officials brought drug-sniffing canines into
the Facility and began a search for controlled
substances; the search inside the Facility continues for
one hour and twenty-two minutes, and it was followed by
a one hour and thirteen minutes search of the external
parts of the Facility and adjoining trailers.  After the
search was completed, Plaintiffs were ordered to line up
in the recreation yard . . . and, fifteen minutes later,
an unspecified number of [Plaintiffs] . . . was brought
into the Facility for lunch.  About half an hour later,
another group of [Plaintiffs] . . . was brought into the
Facility for lunch.  The remaining [Plaintiffs] . . .
were brought into the Facility to consume lunch in
unspecified sub-groups and time increments, with the last
Detainee being brought into the Facility no later than at
1:25 P.M., that is, about two hours after the entire
lunch service started.  Plaintiffs assert[ed] that
Plaintiffs experienced "intimidation" during their return
to the Facility as a result of a "show of force" which
ensued from the fact that the Facility officers were
"holding . . . 'Riot Guns.'"  Plaintiffs assert[ed] that
[they] were denied (a) access to bathrooms for the period
of five minutes, and (b) access to showers for about ten
minutes.  The . . . "Dayroom" and Mess Hall became . . .
available for regular use by [Plaintiffs] one hour and
twelve minutes after all [they] returned to the Facility.

Docket Entry No. 2, at 3-6 (citations and footnotes omitted).

Responding to Plaintiffs' common claims that

the search for controlled substances performed by the
Facility officials was an "unlawful 'prison' search"
impermissible with respect to . . . civilly-committed .
. . Plaintiffs [as well as to Plaintiff's allegations
that] the search . . . amounted to a cruel and unusual
punishment . . . since: (a) "there was [n]o shade in the
[recreation] yard with the exception of a small tent[,]
which could not accommodate" [everyone in the yard]; (b)
[the outside temperature was] 90 to 95 degree[s]"; (c)
re-servings of water to [Plaintiffs] was no more frequent
than every half an hour and the water served was "usually
warm"; and (d) corrections officers "brandished M-16
style guns with individualized mace balls, [and] other
weapons[,] such as batons and night sticks[,] were also
brandished,"

id. at 12, the Court dismissed these allegations for failure to state a claim upon which relief may be granted.  See id. at 21-36.

Addressing Plaintiff's Fourth Amendment claims, the Court explained that, pursuant to Hudson v. Palmer, 468 U.S. 517, 530 (1984), and Bell v. Wolfish, 441 U.S. 520, 558-560 (1979), the search of the Facility was not "illegal," because Plaintiffs' expectation of privacy yield to the Facility officials' legitimate governmental interests to ensure that the Facility remains free of controlled substances.  See Docket Entry No. 2, at 22-23.

With respect to Plaintiff's due process claims, the Court subdivided Plaintiffs' allegations into three groups: (1) those challenging Plaintiffs' conditions of confinement; (2) those asserting verbal and "visual" harassment; and (3) those related to Plaintiffs' medical conditions.  See id. at 23-36.  The Court clarified to Plaintiffs that acts or verbal (or "visual") harassment cannot, on their own, serve as a basis to cognizable constitutional challenges.  See id. at 30-31.  Addressing Plaintiffs' conditions of confinement claims, the Court explained to Plaintiffs that the Third Circuit established a two-part test reading as follows:

> we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes.  In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship  over an extended period of time, that the adverse conditions become excessive in

relation to the purpose assigned to them.

Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir.
1983).  Taking judicial notice of the weather conditions existing
in Plaintiffs' locale during the hours at issue,[5] the Court
concluded that, being placed in the Facility's recreation yard for
three to five hours on a summer morning, when the weather
conditions were mild, could not amount to a "hardship over an
extended period of time," or to an "adverse conditions" excessive
in relation to the purpose of keeping Facility detainees outside
the Facility during a legitimate search for controlled substances.
See Docket Entry No. 2, at 26-27.

    Finally, turning to Plaintiffs' medical claims, the Court
pointed out that, since--according to the original complaint, the
Facility's corrections officers and medical staff were highly
attentive to Plaintiffs' common medical needs, plus these needs
were minor (such as sunburn of Plaintiff's noses)--the actions of
Defendants did not amount to punishment but rather was reasonably
related to a legitimate governmental purpose of ensuring that the
Facility was free of controlled substances.  Consequently, the
Court dismissed all Plaintiffs' common claims.  However, with
respect to those Plaintiffs who--according to the original

---

[5]
    The weather conditions were as follows: temperature varied
between 72 and 84.5 degrees Fahrenheit, humidity was 61 percent,
and western wind varied from 3.5 to 6.9 mph.  See Docket Entry No.
2, at 26

complaint--might have suffered a more serious medical need different from sunburnt noses of the bulk of Plaintiffs, the Cort allowed these plaintiffs with potentially serious and unique medical needs to submit their respective amended complaints clarifying the medical treatment they received. See Docket Entry No. 2, at 35-36.  Walker was one of those Plaintiffs.  Explaining the basis for its decision to dismiss Walker's claims without prejudice, the Court stated as follows:

> [T]he Complaint is not clear as to the medical needs, and treatment of those needs by the Facility's medical personnel  . . . with respect to [certain] Plaintiffs. While it appears that these . . . Plaintiffs were availed to immediate attention by the corrections officials when these other Plaintiffs developed their ailments and/or medical conditions, the Complaint fails to specify whether . . . Walker . . . actually obtained any medical treatment when [he] contacted the Facility's nurse.

Docket Entry No. 2, at 35.

Walker's instant amended complaint aimed to cure the aforesaid deficiencies of his original pleading.

III. **Current Allegations**

Miraculously enough, Walker's instant submission is identical in all substantive respects to amended complaints filed by all original Plaintiffs, as well as to the original complaint. See, e.g., Haines v. Does, 07-5387, Docket Entry No. 8, at 15-19 (detailing the nature of Haines' amended pleading); Williams v. Does, 07-5395, Docket Entry No. 7, at 14-15 (detailing the nature of Williams' amended pleading); Howard v. Does, 07-5394 (DMC),

Docket Entry No. (Providing the same analysis of Howard's amended complaint); <u>Sanchez v. Does</u>, 07-5382 (WJM), Docket Entry No. 4 (amended complaint of Sanchez submitted simultaneously with that of Walker's).  Same as the original complaint and amended complaints of other Plaintiffs, Walker's instant submission re-asserts allegations already dismissed by this Court with prejudice, e.g., the claims that Defendants "gave unprofessional errors of judgement and gross negligence in ordering and enforcing the removal of all [Facility detainees] from the . . . [b]uilding to stay out in [h]ot [s]un for approx[imately six and a half] hours"[6]; in fact Walker's amended complaint recites verbatim even such Plaintiff's claims as their dismissed lamentation over the facts that the shaded area in the recreation yard was not large enough to accommodate all detainees placed, or that the water served to them during the time of the search was insufficiently chilled and provided in amounts and with frequency less than that desired by Plaintiffs.  <u>Id.</u> at 5-7.  Same as all Plaintiffs who submitted their amended complaints, Walker seeks $815 million in damages.  <u>See</u> <u>id.</u> at 8.

---

[6]
    The time-line of events set forth in the original complaint indicates that Plaintiffs were taken to the recreation yard around 8:30 A.M. and returned back to the Facility no later than at 1:25 P.M., <u>see</u> Docket Entry No 1, at 10-11, that is about five hours later.  The basis for the six-and-a-half hours calculation is not clear either from the face of the original complaint or from Walker's instant submission.  However, for the purposes of this Court's constitutional analysis, the difference between five hours and six and a half is of no impact.

The sole difference between Walker's amended complaint and the
original complaint (or amended complaints of other Plaintiffs) is
the statement (repeated three times within Walker's amended
complaint) reading, "stay[ing] out in the [h]ot [s]un for
appr[o]x[imately] 6½ hours . . . caused injury to [Walker] in
getting [h]eat [s]troke," Docket Entry No. 4, ¶¶ 4(b), 4(c), 4(d),
and the following clarification:

> [A]t approximately 3:00 P.M., [Walker] suffered from
> [h]eat [s]troke . . . . [He came] to the Nurse Station
> [and was] seen by the [n]urse [because] there was no
> [d]octor on duty, [and] the [n]urse treated [Walker, and
> within half an hour allowed Walker] to  return to [the
> Facility] to rest. . . .  This [amended] complaint IS NOT
> against the Dep[ar]t[ment] of Correcti[ons] Officers that
> run [the Facility].  This [amended] complaint IS NOT
> against the [personnel] of Medical Dep[ar]t[ment,
> because] they actually help[]ed and gave [Walker] proper
> treatment.

Id. ¶¶ 11, 16-17.  This Court will not revisit the claims dismissed
with prejudice in this Court's November Order, since Walker cannot
get a "second bite on the apple" by merely reiterating the
dismissed claims.[7]

---

[7]

The doctrine of res judicata applies when "the same
issue was previously litigated by the same parties and
was actually decided by a tribunal of competent
jurisdiction."  Duvall v. Attorney General of the
United States, 436 F.3d 382, 391 (3d Cir. 2006).  Three
requirements must be met.  There must be "(1) a final
judgment on the merits in a prior suit involving; (2)
the same parties or their privities; and (3) a
subsequent suit on the same cause of action."
CoreStates Bank, N.A. v. Huls America, Inc., 176 F.3d
187, 194 (3d Cir. 1999) (internal quotation marks and
citation omitted).  Res judicata applies both to claims

This Court's analysis will, therefore, be limited to the allegations made in the above quoted sentence and explanation.

## STANDARD OF REVIEW: RULE 8 PLEADING REQUIREMENT

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to puss muster under the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d

---

actually raised in the prior action and claims which could have been raised but were not.  Id.  We take a broad view of the "same cause of action" requirement, looking to "whether there is an essential similarity of the underlying events giving rise to the various legal claims."  Id. ( citing United States v. Athlone Indus., 746 F.2d 977, 984 (3d Cir. 1984)).
Gonzalez Cifuentes v. INS, 253 Fed. App. 173, 175 (3d Cir. N.J. 2007).

224, 230-34 (3d Cir. 2008).  The Court of Appeals explained:

> [There are] two new concepts in <u>Twombly</u>.  First, . . .
> [t]he [<u>Twombly</u>] Court explained that "[w]hile a complaint
> . . . does not need detailed factual allegations, a
> plaintiff's [Rule 8] obligation to provide the 'grounds'
> of his 'entitle[ment] to relief' requires more than
> labels and conclusions, and a formulaic recitation of the
> elements of a cause of action will not do." <u>Twombly</u>, 127
> S. Ct. at 1964-65 . . . .  The Court explained that Rule
> 8 "requires a 'showing,' rather than a blanket assertion,
> of entitlement to relief." <u>Id.</u> at 1965 n.3.  Later, the
> Court referred to "the threshold requirement of Rule
> 8(a)(2) that the 'plain statement' possess enough heft to
> 'sho[w] that the pleader is entitled to relief.'" <u>Id.</u> at
> 1966.  The Court further explained that a complaint's
> "[f]actual allegations must be enough to raise a right to
> relief above the speculative level." <u>Id.</u> at 1965 & n.3.
> Second, the Supreme Court disavowed certain language that
> it had used many times before -- the "no set of facts"
> language from <u>Conley</u>.  <u>See</u> <u>id.</u> at 1968. . . . As the
> Court instructed, "[t]his phrase is best forgotten as an
> incomplete, negative gloss on an accepted pleading
> standard: once a claim has been stated adequately, it may
> be supported by showing any set of facts consistent with
> the allegations in the complaint." <u>Twombly</u>, 127 S. Ct.
> at 1969.

<u>Phillips</u>, 515 F.3d at 230-32 (original brackets removed).

## **DISCUSSION**

As this Court already explained to Plaintiffs, Walker

included, analysis of whether a civil detainee has been deprived of

liberty without due process is governed by the standards set out by

the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).

<u>Fuentes</u>, 206 F.3d at 341-42.

> A court must decide whether the disability is imposed for
> the purpose of punishment or whether it is but an
> incident of some other legitimate governmental purpose.
> Absent a showing of an expressed intent to punish on the
> part of detention facility officials, that determination
> generally will turn on "whether an alternative purpose to

which [the restriction] may rationally be connected is
assignable for it, and whether it appears excessive in
relation to the alternative purpose assigned [to it]."
Thus, if a particular condition or restriction of [civil]
detention is reasonably related to a legitimate
governmental objective, it does not, without more, amount
to "punishment." Conversely, if a restriction or
condition is not reasonably related to a legitimate goal-
-if it is arbitrary or purposeless--a court permissibly
may infer that the purpose of the governmental action is
punishment that may not constitutionally be inflicted
upon detainees qua detainees.

441 U.S. at 535-39 (citations omitted).

The government has legitimate interests that stem from its
need to maintain security and order at the detention facility.
"Restraints that are reasonably related to the institution's
interest in maintaining jail security do not, without more,
constitute unconstitutional punishment, even if they are
discomforting and are restrictions that the detainee would not have
experienced had he been released while awaiting trial." Bell, 441
U.S. at 540. Retribution and deterrence, however, are not
legitimate non-punitive governmental objectives. See id. at 539
n.20. Nor are grossly exaggerated responses to genuine security
considerations. See id. at 539, 561-62 and n.20.

Since a sweeping search of the facility for presence of
controlled substances is certainly a legitimate governmental
purpose, a removal of civilly-committed detainees in the facility
recreation yard for the purposes of conducting such search does not
violate the detainees' due process, especially if the detainees are
placed in the yard only for a few hours, served with certain amount

of water, allowed to consume their lunch in a timely fashion, and the entire event takes place during a summer morning when the temperature fluctuates between 74 and 82.5 degrees Fahrenheit.

Walker, however, appears to be of opinion that his due process rights were, nonetheless, violated by Defendants' order (placing the detainees in the yard) simply because Walker suffered a heat stroke about an hour and a half after the search was completed and all detainees were returned to the Facility.[8]   In other words, Walker's amended complaint asserts that Defendants violated his due process rights by failing to be clairvoyant enough to foresee that Walker's stay in the yard could make him so overheated that an hour and a half later Walker would not be able to cool off enough to avoid a heat stroke.   However, contrary to Walker's apparent belief, the Fourteenth Amendment does not mandate clairvoyance. Even if this Court is to take as true Walker's self-rendered medical conclusion that it was the fact of his morning in the yard that caused his heat stroke in the afternoon, Walker's amended

---

[8]   According to the original complaint, the first group of detainees returned to the Facility for lunch at 1:28 P.M., while the last detainee was returned to the Facility for lunch at 1:35 P.M.; and all detainees remained in the Facility from that point on. See Docket Entry No. 1, at 11.  According to Walker's amended complaint, he suffered his heat stroke at 3:00 P.M.  Hence, if this Court is to presume that Walker was, in fact, that very last detainee returning to the Facility, his heat stroke occurred one hour and twenty five minutes after he: (1) returned to the Facility from the recreation yard; (2) had his lunch in that cooled Facility, and (3) went to rest after completing his lunch meal.

complaint in no way suggests that Defendants were warned in any way either by Walker or any other entity of the risk of Walker's eventual heat stroke. Walker's claim is limited to nothing more than the sole fact of his heat stroke, read in light of his desire to transform his blame of Defendants for that occurrence into a legal action.[9] The Due Process Clause of the Constitution, however, does not provide him with such right, and this Court is constrained to dismiss his amended pleadings with prejudice. <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (the court shall not direct plaintiff to amend his pleading if such amendment would be futile in light of the facts asserted thus far).

## CONCLUSION

For the foregoing reasons, Walker's amended complaint will be dismissed with prejudice for failure to state a claim upon which relief may be granted. Walker's application for appointment of <u>pro bono</u> counsel will be denied as moot.

---

[9]

Walker's statement that he was seen by a nurse rather than a doctor cannot be read as an allegation against the doctor or the Facility supervising officials in light of Walker's statement that he is having no claims against either the medical or the supervisory personnel of the Facility. Moreover, even if Walker would not so allege, Walker had no constitutional right to be seen and treated by a doctor rather than a nurse, <u>see</u> <u>McNeil v. Redman</u>, 21 F. Supp. 2d 884 (C.D. Ill. 1998) (an inmate has no constitutional right to see a doctor on demand): his rights are limited to not being punished without a due process, and his being properly treated by a nurse could not have been a "punishment."

An appropriate Order accompanies this Opinion.


                                        s/William J. Martini


                                        _____
                                        **WILLIAM J. MARTINI**
                                        **United States District Judge**


Dated:    5/12/08